# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

_____

THE CLOROX COMPANY,

          Plaintiff,

      v.                                     Case No. 09-CV-408

S.C. JOHNSON & SON, INC.,

          Defendant.

_____

## ORDER

On April 21, 2009, plaintiff The Clorox Company ("Clorox") filed a complaint in this district seeking injunctive relief against defendant S.C. Johnson & Son, Inc. ("SCJ") pursuant to Rule 65 of the Federal Rules of Civil Procedure.[1] (Docket #1). In the complaint, Clorox alleges that SCJ is threatening to misappropriate and may have already misappropriated Clorox's trade secrets by hiring away a Clorox executive, in violation of Wisconsin's Uniform Trade Secrets Act, Wis. Stat. §134.90. This case comes before the court under 28 U.S.C. § 1332 on the basis of the parties' diversity of citizenship.

Along with its complaint, Clorox filed an emergency motion for a temporary restraining order ("TRO") and preliminary injunction, as well as motions for expedited discovery and for a protective order governing disclosure of confidential information in this case. (Docket ## 6, 8, 9). Clorox further requested that a hearing be held on

---

[1] Clorox, in its prayer for relief, also seeks compensatory and punitive damages, as well as attorneys' fees and costs. Clorox's entitlement to such relief is not now before the court.

its motion for a TRO and a preliminary injunction. Before holding a hearing on the motion, the court provided SCJ an opportunity to file a response. In its response, SCJ asserted that the court lacks subject matter jurisdiction over this case because Clorox has not adequately pleaded the requisite amount in controversy, and because the former Clorox executive who is alleged to be the conduit of Clorox's trade secrets is an indispensable party whose joinder as a defendant would destroy complete diversity of citizenship.

A hearing was held before the court on May 1, 2009, at which time the court withheld any ruling on the merits of Clorox's motion for a TRO and preliminary injunctive relief pending Clorox's filing of a reply brief to address the issue of subject matter jurisdiction. Since then, Bailey has filed a motion to intervene as a party defendant pursuant to Rule 24 of the Federal Rules of Civil Procedure, and SCJ has filed a motion to dismiss the case in its entirety. (Docket ## 39, 44, 46). Several other ancillary motions have also been filed. Before addressing the parties' motions, a brief review of the factual background is in order.

## BACKGROUND

The parties in this case need little introduction. Clorox is a publicly traded company incorporated in Delaware with its principal place of business located in Oakland, California. (Compl. ¶ 3). Clorox bills itself as "a leading manufacturer and marketer of consumer products," with "some of consumers' most trusted and recognized brand names," including Clorox brand cleaners, Liquid-Plumr brand clog

-2-

remover and Glad brand bags, wraps and containers. (Compl. ¶¶ 3, 8). SCJ is a private company incorporated in Wisconsin with its principal place of business located in Racine, Wisconsin. (Compl ¶ 4). SCJ also manufactures and markets consumer products with widely recognized brand names, including Scrubbing Bubbles brand cleaners, Drano brand clog remover, Ziploc brand bags and containers and Saran brand wraps.[2] (Compl. ¶ 10). Both companies have also ventured into what Clorox refers to as "natural cleaning products," with Clorox using the brand name GreenWorks and SCJ using the brand name Nature's Source. (Compl. ¶ 10).

The dispute between these two consumer products giants arose from the sudden departure of Clorox's Vice President of Product Supply Timothy Bailey ("Bailey") on April 14, 2009. (Compl. ¶ 36). Clorox hired Bailey in 1996, and promoted him to Vice President of Product Supply in 2005. (Compl. ¶¶ 18-19). In that position, Bailey was responsible for Clorox's global supply chain. (Compl. ¶ 19). In 2008, Bailey received a total compensation package from Clorox of nearly $1,000,000.00. (Compl. ¶ 27). Bailey also sat on Clorox's three senior governance "teams": the corporate strategy team, the business operations leadership team, and the people and culture team. As a member of these teams, Bailey is alleged to have received detailed financial information and strategic plans, including disclosures

---

[2]In its opposition brief to Clorox's motion for a TRO and injunctive relief, SCJ points out that it also manufactures and markets several other product lines, including insect control products under the OFF! and Raid brand names, "air care" products under the Glade brand name and shaving products under the Edge brand name. (Def.'s Opp'n Br. 3, Docket #18).

made at meetings held on April 13, 2009. (Compl. ¶¶ 13-17, 45-49). Clorox alleges that Bailey had ongoing access and detailed knowledge of the cost structure for Clorox suppliers, as well as pricing strategies for Clorox's entire global products offerings. (Compl ¶¶ 20-21). As recently as March of 2009, Bailey also allegedly participated in meetings regarding a Clorox research and development project, where he was "exposed" to specific designs and attributes of "a key component used in a number of products common to Clorox and S.C. Johnson." (Compl. ¶¶ 22-23; Pl.'s Reply Br. 4, Docket #32). Clorox further alleges that in January of 2009, Bailey received Clorox's play book for release and launch of its GreenWorks products in specific countries around the world through 2014. (Compl. ¶ 25; Pl.'s Reply Br. 4, Docket #32).

On the morning of April 14, 2009, Bailey informed Clorox management that he would be leaving Clorox to take a new position at SCJ. (Compl. ¶ 36). Clorox alleges that it subsequently uncovered evidence that Bailey may have taken sensitive confidential information with him to SCJ. Clorox lists the following as examples of "suspicious acts": (1) Bailey had his assistant order a shredder to destroy papers in his office four days before resigning; (2) Bailey was recorded on surveillance video entering Clorox's offices the weekend before his resignation with a briefcase, and later leaving the offices with a large bag on rollers; (3) Bailey entered Clorox's offices in the wee hours of April 14, 2009, and may have downloaded information from his office laptop to a USB drive, including Microsoft

Excel files named "Comparison Spreadsheets" as well as files named "CLX Computer" and "Contacts." (Compl. ¶¶ 41-44). Clorox alleges that it protects its trade secrets through internal confidentiality and data security policies and through a confidentiality agreement, a version of which Bailey signed in 1996. (Compl. ¶¶ 28-35).

At SCJ, Bailey will take the position of Senior Vice President Product Supply. (Def.'s Opp'n Br. 15, Docket #18; Compl. ¶ 38). In that position, SCJ asserts that Bailey will be responsible for its plant management, supply planning and customer service, warehouse and transportation logistics, procurement, product safety and quality control, and engineering of "work systems." Bailey will also sit on SCJ's executive team. He was not a member of Clorox's executive team.[3] (Def.'s Opp'n Br. 14-15, Docket #18).

## I.    SUBJECT MATTER JURISDICTION

Before reaching the merits of Clorox's claim, the court has an obligation to satisfy itself that jurisdiction lies over the subject matter of this case. *See Hammes v. AAMCO Transmissions, Inc.*, 33 F.3d 774, 778 (7th Cir. 1994); *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) (holding that courts have an obligation to determine whether subject matter jurisdiction exists even in the absence of a challenge by a

---

[3]In conjunction with SCJ's opposition brief, Bailey submitted an affidavit outlining his reasoning for leaving Clorox and taking a job with SCJ. In the affidavit, Bailey asserts that he decided to go to SCJ because he believed Clorox was not properly valuing his role, because SCJ offered him a competitive compensation package, and for family reasons. (Bailey Aff. ¶ 56; Docket #21).

-5-

party). When jurisdiction is based on diversity of the parties' citizenship and amount in controversy, as defined by 28 U.S.C. § 1332, the rule of complete diversity applies. Under this rule, diversity jurisdiction cannot be maintained if citizens of the same state are parties on both sides of the lawsuit. *Krueger v. Cartwright*, 996 F.2d 928, 931 (7th Cir. 1993). The citizenship of the parties is generally determined at the time the complaint is filed. *Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 570-71 (2004). Under § 1332, corporations are deemed to be citizens of the state in which they are incorporated and the state in which they maintain their principal place of business. 28 U.S.C. § 1332(c)(1); *see Metro. Life Ins. Co. v. Estate of Cammon*, 929 F.2d 1220, 1223 (7th Cir. 1991) (noting that the Seventh Circuit follows the "nerve center" approach whereby a corporation's principal place of business is deemed to be where its executive headquarters are located). Individuals are deemed to be citizens of the state in which they are domiciled. *Galva Foundry Co. v. Heiden*, 924 F.2d 729, 730 (7th Cir. 1991) (citing *Gilbert v. David*, 235 U.S. 561, 569 (1915)).

In its motion to dismiss, SCJ asserts that the court lacks subject matter jurisdiction because Bailey is an indispensable party to this action under Rule 19(b) and because Clorox has failed to adequately plead the amount in controversy required under 28 U.S.C. § 1332. In his motion, Bailey asserts that he has a right to intervene as a party defendant in this case. And so, the court must consider whether Bailey must be made a party in this action, and whether Clorox has

-6-

adequately pleaded the jurisdictional elements of § 1332. With respect to diversity of citizenship, the court finds that Clorox and SCJ maintain diverse citizenship, with Clorox being a citizen of both Delaware and California and SCJ being a citizen of Wisconsin. However, Bailey maintains his domicile in the state of California.[4] The parties agree that allowing Bailey to become a party defendant in this case would destroy complete diversity of citizenship, thereby stripping the court of § 1332 jurisdiction. What's more, the court's supplemental jurisdiction would not save the day if Bailey were joined. *See* 28 U.S.C. § 1367(b) (stating that for actions brought solely under § 1332, "district courts shall not have supplementary jurisdiction . . . over claims by plaintiffs against persons made parties under Rule 13, 19, 20 or 24 . . .when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332").

Therefore, the court must first determine whether Bailey has a right to intervene under Rule 24(a).[5] The court will then determine whether Bailey is either a necessary or an indispensable party under Rule 19. If Bailey were found to be an indispensable party who cannot be joined, the court would be obliged to dismiss the case without prejudice. *See In re Olympic Mills Corp.*, 477 F.3d 1, 7 (1st Cir. 2007) (addressing a person's right to intervene under Rule 24(a) first, then considering the

---

[4]The court notes that the parties do not dispute that Bailey was a citizen of California at the time the complaint in this case was filed.

[5] The court notes parenthetically that it considers a party entitled to intervene under Rule 24(a) to be a necessary party under Rule 19(a).

Case 2:09-cv-00408-JPS   Filed 06/09/09   Page 7 of 34   Document 62

indispensability of the person as a party under Rule 19(b)); *MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 382-90 (2d Cir. 2006) (discussing the interrelation between Rule 24(a) and Rule 19).

A.    **Motion to Intervene Under Rule 24(a)(2)**

In his motion to intervene, Bailey seeks to intervene as a party defendant in this case pursuant to Rule 24(a).  A person seeking to intervene as of right pursuant to Rule 24(a)(2) must:  "(1) make a timely application, (2) have an interest relating to the subject matter of the action, (3) be at risk that that interest will be impaired by the action's disposition and (4) demonstrate a lack of adequate representation of the interest by the existing parties." *Vollmer v. Publishers Clearing House*, 248 F.3d 698, 705 (7th Cir. 2001).  The court addresses each of these elements in turn.

The timeliness element is to be considered under a totality of the circumstances, including whether the potential intervenor acted reasonably promptly and with reasonable diligence in seeking intervention, and whether the original parties or the potential intervenor to the action will suffer prejudice from any delay. *See Reich v. ABC/York-Estes Corp.*, 64 F.3d 316, 321 (7th Cir. 1995).  This case commenced just over a month ago, and this is the court's first order addressing any of the parties' substantive motions.  The court finds little prejudice accruing from Bailey's potential intervention at this point in the case.  Therefore, the court views Bailey's motion as having been timely filed.

A person seeking to intervene under Rule 24(a)(2) must demonstrate he or she has a "direct, significant legally protectable interest." *Am. Nat'l Bank v. City of Chicago*, 865 F.2d 144, 146 (7th Cir. 1989) (citations omitted). The Seventh Circuit has described the necessary interest in the litigation to be "something more than a mere 'betting' interest . . . but less than a property right." *Security Ins. Co. of Hartford v. Schipporeit, Inc.*, 69 F.3d 1377, 1380-81 (7th Cir. 1995) (internal citations omitted). A potential intervenor has only a "betting" interest if the intervenor "has some outstanding monetary claim from one of the parties" and the intervention is meant only "to ensure that the outcome of the case preserves as much of its claim as possible." *Reich*, 64 F.3d at 322. Here, Bailey has demonstrated much more than a mere betting interest. Bailey claims interests in his employment with SCJ, being free from restraints that his former employer Clorox seeks to place on Bailey's ability to work for SCJ and an interest in not being restrained by the application of the inevitable disclosure theory of trade secrets.[6] Although Clorox argues that Bailey's claimed interests are not unique to him, Clorox does not seriously dispute Bailey has more than a betting interest in the outcome of this case. The court finds Bailey's interests as a former Clorox employee and current SCJ employee to be more than sufficient to support his Rule 24(a) motion.

---

[6]Relatedly, the court finds that Bailey also has an interest in the validity, construction and interpretation of the confidentiality agreement or agreements he is alleged to have entered into with Clorox, all of which may be important ingredients in proving trade secrets misappropriation, be it under Wisconsin law or California law. *See* Wis. Stat. § 134.90 (requiring showing of improper disclosure or acquisition of trade secrets and reasonable efforts to maintain secrecy of those trade secrets); Cal. Civil Code § 3426.1 (including similar language).

Case 2:09-cv-00408-JPS   Filed 06/09/09   Page 9 of 34   Document 62

Next, Bailey must demonstrate that his stated interests may be impaired by the disposition of this case in his absence. A potential intervenor's interests may be impaired if the resolution of a legal question in the case "would, as a practical matter, foreclose the rights of the proposed intervenor in a subsequent proceeding." *Shea v. Angulo*, 19 F.3d 343, 347 (7th Cir. 1994) (citations omitted). Here, the most obvious potential impairment Bailey would suffer would be the foreclosure of his opportunity to work for SCJ. Bailey notes that, if an injunction were ultimately granted in this case, any subsequent relief he might obtain against Clorox would not allow him to continue to work at SCJ. Clorox asserts that Bailey's interest would not be impaired by the disposition of this case because SCJ is adequately representing Bailey's interests. The court finds that, as a practical matter, Bailey's claimed interests in this case will not be impaired in his absence. To be sure, the disposition of this case could result in the impairment of Bailey's stated interests. If Clorox is successful in prosecuting its claim, Bailey would be foreclosed from continuing his employment with SCJ for some time. Yet, the court is not convinced that Bailey's presence or absence as a party in this case would have any effect on those interests. SCJ shares Bailey's stated interests, and is seeking quite vigorously to prevent any impairment of them.

Bailey's motion also fails against the backdrop of the fourth element of Rule 24(a). The fourth element requires a showing by the potential intervenor that the existing parties to the litigation do not adequately represent the intervenor's

-10-

interests. In general, this element is satisfied if the intervenor shows "that the representation 'may be' inadequate and 'the burden of making that showing should be treated as minimal.'" *Ligas ex rel. Foster v. Maram*, 478 F.3d 771, 774 (7th Cir. 2007) (quoting *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972)). However, where, as is the case here, "the parties have the same ultimate objective in the underlying action, the intervenors must demonstrate, at the very least, that some conflict exists." *Meridian Homes Corp. v. Nicholas W. Prassas & Co.*, 683 F.2d 201, 205 (7th Cir. 1982) (citation omitted). Here, Bailey asserts that SCJ does not share his interests in asserting rights afforded to him under California law as a former Clorox employee. Bailey again argues that California law affords him the right to be free from illegal restraints to his ability to obtain gainful employment. Clorox responds asserting that Bailey's interests in this case are aligned with those of SCJ. Clorox notes that Bailey has cooperated with SCJ in this case, and that Bailey shares the same counsel with SCJ.[7] Therefore, Clorox contends, any potential conflict between the interests of SCJ and Bailey is hypothetical. The court agrees. SCJ and Bailey both seek to defeat Clorox's claim for injunctive relief. Both SCJ and Bailey share a paramount interest in consummating an employment relationship. Moreover, the court finds no conflict between Bailey and SCJ on the alleged interests afforded employees under

---

[7]The same lawyers from the law firm of Foley & Lardner LLP who have appeared on behalf of SCJ in this case also filed Bailey's motion to intervene.

-11-

California law.  SCJ is seeking to have the court apply California law to Clorox's claim, and this choice of law question is not dependent on Bailey's intervention as a party.  While the court recognizes that SCJ's interests as Bailey's employer could conceivably differ from Bailey's interests as an employee, Bailey has not demonstrated that any current conflict exists as between those interests.  As a result, the court finds that Bailey has failed to demonstrated that his interests are not adequately represented by SCJ in this case.

Having found that Bailey has not met his burden in establishing the four requirements of Rule 24(a)(2), the court is obliged to deny Bailey's motion to intervene.[8]  This does not end the subject matter jurisdiction inquiry, however, because SCJ also asserts that Bailey is an indispensable party under Rule 19.

**B.   *Persons Required to Be Joined Under Rule 19***

SCJ moves to dismiss this case pursuant to Rule 12(b)(7) for failure to join a party under Rule 19.  In its motion, SCJ argues that Bailey is a necessary party because he is a person who claims an interest in the subject matter of the action pursuant to Rule 19(a)(1)(B).  Since Bailey's joinder is not feasible due to the court's limited subject matter jurisdiction, SCJ argues that Bailey is also an indispensable party under Rule 19(b) and, therefore, the court should dismiss the case.

---

[8]Because Bailey does not argue that he is a permissible party under Rule 24(b), the court declines to address the point.

-12-

The underlying purpose of Rule 19 is "to permit joinder of all materially interested parties to a single lawsuit so as to protect interested parties and avoid waste of judicial resources." *Davis Cos. v. Emerald Casino, Inc.*, 268 F.3d 477, 481 (7th Cir. 2001) (citation omitted). However, the court must be cautious in dismissing a case for failure to join a person "where doing so deprives the plaintiff of his choice of federal forum." *Id.* Rule 19(a) defines persons who are required to be joined if feasible – persons sometimes referred to as "necessary parties." Under Rule 19(a)(1)(B),[9] a person claiming an interest relating to the subject matter of the action must be joined if disposing the case in that person's absence may: (1) "as a practical matter impair or impede the person's ability to protect the interest"; or (2) "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1)(B).

The court has already concluded that Bailey has an interest in the subject matter of this case. On the matter of showing an impairment or impediment to Bailey's stated interests, SCJ rehashes arguments similar to those made by Bailey in his motion to intervene. SCJ claims that disposing this case in Bailey's absence will impair Bailey's ability to protect his interests in being free from illegal restraints to his employment, and to prevent the application of the inevitable discovery

---

[9]SCJ does not assert that complete relief cannot be accorded in Bailey's absence and, therefore, the court does not address whether Rule 19(a)(1)(A) applies to this case.

Case 2:09-cv-00408-JPS   Filed 06/09/09   Page 13 of 34   Document 62

doctrine. SCJ also asserts Bailey understands and may be able to more effectively discover information that would aid in SCJ's defense against Clorox's claim. Clorox asserts that Bailey's stated interests, to the extent they are relevant to a Rule 19 analysis, are virtually identical to SCJ's interests and, therefore, fully represented even in Bailey's absence. The court again agrees. SCJ has failed to show any real impediment or impairment to Bailey's ability to protect his state interests. SCJ is advocating for the application of California law, and seeking to enter into an unimpeded employment relationship with Bailey. Moreover, Bailey is fully cooperating with SCJ in defending against Clorox's claims.

SCJ has also failed to demonstrate either Clorox or SCJ would be subject to substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of Bailey's interests in this case. SCJ argues that Bailey could bring a claim in California court and obtain a judgment declaring that Clorox cannot restrain Bailey's employment, but that this court could enjoin SCJ from employing Bailey under Wisconsin law. This, SCJ asserts, would lead to SCJ being subjected to inconsistent obligations. However, under SCJ's hypothetical scenario, SCJ would not be subject to inconsistent obligations; Clorox would be subject to a declaratory judgment and SCJ would be subject to an injunction. Therefore, the court deems any risk of either SCJ or Clorox incurring, multiple or inconsistent obligations due to Bailey's absence from this case to be slight. As a result, the court finds that Bailey is not a party required to be joined if feasible under Rule 19(a).

-14-

Even if the court had found Bailey to be a person required to be joined under Rule 19(a), the court does not consider Bailey indispensable to this action under Rule 19(b). Bailey may be an essential or indispensable witness in this case, and may also be a joint tortfeasor based on the allegations in Clorox's complaint, but this alone does not make Bailey an indispensable party under Rule 19(b). *See Salton, Inc. v. Philips Domestic Appliances and Pers. Care B.V.*, 391 F.3d 871, 877-80 (7th Cir. 2004) (holding that a joint tortfeasor was not an indispensable party, and noting distinction between indispensable witness and an indispensable party). Accordingly, the court finds that Rule 19 neither requires that Bailey be joined as a party, nor mandates dismissal of this case.

## C.    *Amount in Controversy*

In its motion to dismiss, SCJ also argues that this case should be dismissed because Clorox fails to adequately plead the amount in controversy in its complaint. Under § 1332, the court's diversity jurisdiction is limited to cases in which the "matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. . ." 28 U.S.C. § 1332(a). In its complaint, Clorox alleges that "the amount in controversy exceeds $75,000 . . . ." (Compl. ¶ 6, Docket #1). SCJ asserts that Clorox failed to allege that the claimed amount in controversy is exclusive of interest and costs, and that the case should now be dismissed since Clorox has not sought to amend its complaint to correct this deficiency. Clorox responds arguing that it has adequately pleaded the amount in controversy in at least two measures. Clorox

-15-

asserts that the trade secrets it alleges Bailey will disclose to SCJ relate to development and sales strategies for products lines which generate hundreds of millions of dollars in revenue for both parties. Clorox further asserts that Bailey's compensation at Clorox was close to $1,000,000.00 in 2008 and that Bailey's compensation at SCJ would be competitive to that amount. The Seventh Circuit has recognized at least three methods by which to measure the amount in controversy in a case for injunctive relief: (1) the value of the injunction to the plaintiff; (2) the cost of the injunction to the defendant; or (3) the benefit the defendant would be forced to forego if the injunction were granted. *See Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 652 (7th Cir. 2006); *In re Brand Name Prescription Drugs Antitrust Litig.*, 123 F.3d 599, 610 (7th Cir. 1997). The court finds that Clorox has adequately alleged the amount in controversy requirement of § 1332 under at least one of these methods. The value of the injunction to the plaintiff is difficult to measure at this point in the case because Clorox has not placed a value on the alleged trade secrets Bailey possesses. However, the court considers a better measurement of the amount in controversy at this juncture to be the cost to SCJ, or its lost benefit from the injunction. If SCJ were to be enjoined from employing Bailey, it stands to lose the benefit of Bailey's services, which is presumably at least as valuable as the compensation SCJ was willing to pay Bailey for those services. The parties do not dispute that Bailey's compensation as an executive of SCJ will be well over $75,000. Therefore, the court is satisfied that

-16-

Clorox's complaint alleges "enough about jurisdiction to create some reasonable likelihood that the court is not about to hear a case that it is not supposed to have the power to hear." *Hammes*, 33 F.3d at 778. The court now turns its attention to the remaining contentions SCJ sets forth in its motion to dismiss, beginning with the choice of law.

## II.    CHOICE OF LAW

In its motion to dismiss, SCJ asserts that California law should apply to Clorox's claim of misappropriation of trade secrets. SCJ further argues that, under California law, Clorox has failed to state a claim upon which relief can be granted. Clorox responds by arguing that SCJ has waived any choice of law argument by not raising it explicitly in its opposition brief to Clorox's emergency motion for a TRO and preliminary injunction. Clorox also argues that Wisconsin law should governs its trade secret claim.

The court first rejects Clorox's assertion that SCJ has waived any choice of law argument. Despite the fact that SCJ chose initially to press the issue of subject matter jurisdiction, the court is satisfied that SCJ has notified the court of the choice of law issue in a timely manner by filing its motion to dismiss. *See generally Jaurequi v. John Deere Co.*, 986 F.2d 170, 173 (7th Cir. 1993) (requiring party to notify court in timely manner to preserve choice of law issue for appeal). SCJ's motion to dismiss was filed before the court made any ruling on the merits of this case. Notwithstanding SCJ's motion, the court itself made passing reference to this

-17-

issue at the May 1, 2009 hearing.  So, without further ado, on with the choice of law analysis.

In determining whether Wisconsin or California law applies to Clorox's misappropriation claim, the court applies the choice of law rules of Wisconsin.  *See Salton*, 391 F.3d at 879 (noting parenthetically that choice of law rules of the forum state apply to trade secret misappropriation claim).  Under Wisconsin's choice of law rules, the court begins its analysis with a weak presumption that the law of the forum state applies.  *See State Farm Mut. Auto. Ins. Co. v. Gillette*, 251 Wis.2d 561, 588, 2002 WI 31, ¶¶ 50-51 (2002).  This presumption may be initially overcome in two ways:  (1) if it is clear that the nonforum contacts are of greater significance than the forum contacts; or (2) if the contacts of the forum state to the facts "are so obviously limited and minimal that application of . . . [the forum state's] . . . law constitutes officious intermeddling."  *Drinkwater v. Am. Family Mut. Ins. Co.*, 2006 WI 56 ¶¶ 40-42 (2006).  If the contacts of the forum state and the nonforum state to the facts are both significant, the court must then look to five "choice-influencing factors" to determine which state's law applies.  *See id.* at ¶¶ 43-45.  These factors include: "(1) Predictability of results; (2) Maintenance of interstate and international order; (3) Simplification of the judicial task; (4) Advancement of the forum's governmental interests; and (5) Application of the better rule of law."  *Gillette*, 2002 WI 31, ¶ 53.

Here, SCJ cites the following California contacts with the facts of this case: (1) Clorox is a California resident; (2) Bailey is and was a California resident; (3)

-18-

Bailey was employed by Clorox in California; (4) Bailey signed a confidentiality agreement with Clorox that is governed by California law; and (5) Bailey allegedly acquired Clorox's trade secrets while working for Clorox in California. In response, Clorox cites the following Wisconsin contacts with the facts of this case: (1) SCJ is a Wisconsin resident; (2) Bailey will work or is already working for SCJ in Wisconsin; (3) Bailey may or already has become a resident of Wisconsin or Illinois; and (4) the threatened disclosure of Clorox's trade secrets would occur at SCJ's offices in Wisconsin. The court finds that the California and Wisconsin contacts are both significant, in that Wisconsin's contacts are more than minimal and California's contacts are not clearly of greater significance than Wisconsin's contacts. Therefore, the court will look to Wisconsin's "choice-influencing factors" for further guidance.

The first factor concerns the parties' expectations as to the legal consequences of the conduct which led them to court. *See Gillette*, 2002 WI 31, ¶ 54. In other words, which state's law, if applied, would lead to the more predictable or expected result based on the facts of the case. SCJ argues that this factor favors the application of California law because Clorox and Bailey entered into an employment relationship in California and Clorox sought to protect its trade secrets under California law when it had Bailey sign a confidentiality agreement. SCJ asserts that Clorox and Bailey could not have reasonably expected the laws of any state other than California to govern that agreement and their employment

-19-

relationship. Clorox responds arguing that SCJ is threatening to misappropriate Clorox trade secrets in Wisconsin, and, as a Wisconsin corporation, SCJ had every reason to expect Wisconsin law would apply to any trade secret dispute from its hiring of Bailey. Clorox further asserts that Clorox's relationship with Bailey, who is not a party to this case, is not relevant to the predictability factor.

The court finds that the first factor favors the application of California law. Clorox's complaint alleges that SCJ reached into California to hire Bailey away from Clorox. It is reasonable for both SCJ and Clorox to expect that the laws of California would apply to any dispute arising from that conduct. Moreover, while Bailey has not been made a party to this case, Clorox's trade secret misappropriation claim depends in large part on its previous employment relationship with Bailey. Indeed, Clorox would have the same expectation that its trade secrets not be misappropriated no matter where SCJ maintained its principal place of business, or in which state Bailey was working. Therefore, the court finds that the predictability of results factor weighs in favor of applying California law.

The second factor requires the court to look at any impediments to interstate commercial intercourse that may arise from the application of one state's law over the other. *See Drinkwater*, 2006 WI 56, ¶ 51. SCJ argues that California is substantially concerned with the outcome of this case because of its public policy generally disfavoring non-compete agreements. SCJ claims that California law protects employees in its state, including Bailey, from attempts by employers to

restrain future employment through non-compete agreements and through the inevitable disclosure theory. Clorox responds arguing that the court would not dishonor California law, which Clorox claims takes a minority view with respect to inevitable disclosure, if Wisconsin law were applied to this case. Clorox further argues that Wisconsin takes a majority view by recognizing inevitable disclosure.

The court finds that California is substantially concerned with this case. Both parties concede that California law is hostile towards non-compete agreements and does not recognize inevitable disclosure theory in trade secret misappropriation claims. The fact that California is apparently in the minority of states on this issue only increases its interests in ensuring that its laws apply to disputes between its employers and employees. At its core, this case is at least as much a dispute between a California corporation and its former California employee as it is a dispute between California and Wisconsin corporations. Wisconsin should, therefore, defer to the laws of California.

The third factor looks to whether application of one state's law over the other would simplify the judicial task. The Wisconsin Supreme Court has held that "the judicial task is rarely simplified when lawyers and judges must apply themselves to foreign law." *Drinkwater*, 2006 WI 56, ¶ 53. SCJ asserts that the application of California law would actually simplify the judicial task in this case because California courts have spoken on the specific application of the inevitable disclosure theory of trade secrets misappropriation while Wisconsin courts have not. Clorox responds

Case 2:09-cv-00408-JPS   Filed 06/09/09   Page 21 of 34   Document 62

arguing that Wisconsin's trade secrets law is manageable, that the court is familiar with Wisconsin law and that the Seventh Circuit has specifically addressed inevitable disclosure of trade secrets in *PepsiCo, Inc. v. Redmond*, 54 F.3d 1262 (7th Cir. 1995).

The court finds that the simplicity factor slightly favors application of California law. While the court respects the view of the Wisconsin Supreme Court that the application of Wisconsin law in Wisconsin courts generally simplifies the judicial task, the court finds that the application of Wisconsin law would not simplify its task here. The parties have yet to cite a Wisconsin court that has addressed whether the inevitable disclosure theory is viable under Wisconsin's trade secret laws. In *PepsiCo*, the Seventh Circuit applied Illinois trade secrets law. In fact, to demonstrate the viability of its inevitable disclosure theory, Clorox has urged the court to look to Illinois law in applying Wisconsin law, thus complicating the judicial task. On the other hand, California courts have addressed the matter directly, making the court's task of applying California law considerably less burdensome. Moreover, unlike Wisconsin's state courts, the federal courts are called upon to apply foreign law with some regularity. The court does not consider the application of California law to be particularly burdensome on the parties' counsel either. Both SCJ and Clorox are represented by counsel from large law firms, each with California offices, and are undoubtedly accustomed to applying themselves to the laws of many states.

-22-

The fourth factor looks to whether the forum state's governmental interests favor application of the forum state's law. *Drinkwater*, 2006 WI 56, ¶ 58. SCJ claims that this factor does not clearly favor the application of Wisconsin law. SCJ asserts that both Wisconsin and California have interests in protecting their companies' trade secrets while also favoring the mobility of their resident employees. Clorox argues that the application of Wisconsin law would advance Wisconsin's interests in protecting trade secrets. The court finds that Wisconsin's governmental interests would not necessarily be hindered by the application of California law. Nor would California's interests be necessary hindered by the application of Wisconsin law. In short, this factor neither favors nor disfavors the application of either state's law to this case.

Finally, the court must consider "the better rule of law." This fifth factor comes into play where one state's law "is anachronistic or fails to reflect modern trends." *Gillette*, 2002 WI 31, ¶ 66. SCJ asserts that this factor should not affect the choice of law analysis in this case. Clorox asserts that Wisconsin law would be the better law because it comports with the vast majority of states on the viability of the inevitable disclosure theory of misappropriation of trade secrets. However, neither party argues California's law governing misappropriation of trade secrets, although perhaps different from most states, is outdated based on modern trends.[10] The court

---

[10]In fact, both California and Wisconsin appear to have adopted similar uniform statutes on trade secrets. *Compare* Wis. Stat. § 134.90 *with* Cal. Civ. Code § 3426.1.

-23-

has no basis on which to conclude that California law is somehow anachronistic on this point of law. Therefore, the court finds that the fifth factor does not favor the application of either Wisconsin or California law.

After considering the foregoing factors, the court finds that the California contacts with the facts of this case are of greater significance than Wisconsin's contacts. As a result, the court will apply California law to Clorox's trade secret misappropriation claim.

## III. SCJ'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Having found that California law applies to Clorox's misappropriation claim, the court now turns to SCJ's final contention in its motion to dismiss: that Clorox has failed to state a claim upon which relief can be granted. Although SCJ cites Rule 12(b)(1) of the Federal Rules of Civil Procedure as the basis for dismissal, the court construes this portion of SCJ's motion to be made pursuant to Rule 12(b)(6). In considering a motion to dismiss under Rule 12(b)(6), the court accepts all factual allegations of the complaint as true and draws all reasonable inferences in favor of the plaintiff. *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 625 (7th Cir. 2007). The court will grant a motion to dismiss only where it appears beyond doubt from the pleadings that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

-24-

In general, to make a prima facie claim for misappropriation of trade secrets under California's Uniform Trade Secrets Act ("CUTSA"), a plaintiff must demonstrate: "(1) the plaintiff owned a trade secret, (2) the defendant acquired, disclosed, or used the plaintiff's trade secret through improper means, and (3) the defendant's actions damaged the plaintiff."[11] *Sargent Fletcher, Inc. v. Able Corp.*, 3 Cal. Rptr. 3d 279, 283-84 (Cal. Ct. App. 2003) (citing Cal. Civ. Code § 3426.1). CUTSA further provides that an "[a]ctual or threatened misappropriation may be enjoined." Cal. Civ. Code § 3426.2. Threatened misappropriation may be demonstrated by showing either that the defendant possesses trade secrets and has misused or disclosed those secrets in the past, that the defendant intends to misuse or disclose those secrets, or that the defendant possesses trade secrets and wrongfully refuses to return them after a demand for return is made. *Cent. Valley Gen. Hosp. v. Smith*, 75 Cal. Rptr. 3d 771, 791-92 (Cal. Ct. App. 2008) (citations omitted). However, California courts have rejected the so-called inevitable disclosure theory, whereby a plaintiff may prove threatened misappropriation by showing that a former employee's new employment will inevitably lead that

---

[11] Other courts applying California law have described the elements of a misappropriation claim somewhat differently when a corporation is the defendant:

> A corporation misappropriates a trade secret when (1) it discloses or uses the trade secret of another without express or implied consent, and (2) at the time of the disclosure or use, it knew or had reason to know that its knowledge of the trade secret was derived from a person who owed a duty to the entity seeking relief to maintain the trade secret's secrecy or limit its use.

*Bayer Corp. v. Roche Molecular Sys., Inc.*, 72 F.Supp.2d 1111, 1117 (N.D. Cal. 1999) (citation omitted).

Case 2:09-cv-00408-JPS   Filed 06/09/09   Page 25 of 34   Document 62

employee to rely on the plaintiff's trade secrets. *See e.g.*, *id.* at 789-90; *Whyte v. Schlage Lock Co.*, 125 Cal. Rptr. 2d 277, 293-94 (Cal. Ct. App. 2002) (holding that the "inevitable disclosure doctrine cannot be used as a substitute for proving actual or threatened misappropriation of trade secrets"); *Globespan, Inc.. v. O'Neill*, 151 F.Supp.2d 1229, 1235 (C.D. Cal. 2001) (noting rejection of inevitable disclosure doctrine under California law in the Central District of California); *Bayer Corp.*, 72 F.Supp.2d at 1117-20 (holding California law does not recognize inevitable disclosure theory); *see generally Lam Research Corp. v. Deshmukh*, 157 Fed.Appx. 26, 28 (9th Cir. 2005) (noting California law does not recognize inevitable disclosure doctrine). Therefore, a plaintiff must do more than show the defendant possesses trade secrets to prove a claim of threatened misappropriation of trade secrets. *See id.* at 792.

SCJ argues that Clorox has failed to state a claim under California law because Clorox has not alleged that SCJ has actually acquired or used any of Clorox's trade secrets, because Clorox has not alleged that SCJ is threatening to do so, and because Clorox's only theory of liability relies on the inevitable disclosure doctrine. Notably, Clorox has chosen not to respond to SCJ's assertion that its complaint fails to state a claim under California law.

In its complaint, Clorox makes the general allegation that SCJ has misappropriated, and/or has threatened to misappropriate Clorox's trade secrets. (Compl. ¶ 55, Docket #1). Specifically, the complaint alleges that Bailey was given

-26-

access to, and is in possession of, Clorox's trade secrets.  (Compl. ¶ 52, Docket #1).

The complaint further summarizes Clorox's claim as follows:

> 55.    It is inevitable that Bailey will use or rely on the information that he obtained while working for Clorox in connection with his position at S.C. Johnson and, upon information and belief, Bailey and S.C. Johnson have used, disclosed or threatened to use or disclose Clorox's confidential, proprietary, and trade secret information with full knowledge that this information was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use. Thus, S.C. Johnson and Bailey threaten the unlawful misappropriation of Clorox's trade secret information.

(Compl. ¶ 55).

Rule 8 of the Federal Rules of Civil Procedure states that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Rule 8 establishes a notice standard of pleadings, which requires only that a plaintiff set forth "the bare minimum facts necessary to put the defendant on notice of the claim so that he can file an answer."  *Higgs v. Carver*, 286 F.3d 437 (7th Cir. 2002) (citation omitted).  Therefore, a plaintiff "need not plead facts or legal theories; it is enough to set out a claim for relief."  *Nance v. Vieregge*, 147 F.3d 589, 590 (7th Cir. 1998).  Here, Clorox has set out a claim for relief based almost entirely on its legal theory of inevitable disclosure.  However, notwithstanding Clorox's legal theory, and making all reasonable inferences in favor of Clorox, the court finds that Clorox has set forth the bare minimum facts to state a claim of misappropriation of trade secrets.  The complaint alleges that Bailey obtained trade secrets, and that "upon information and belief, Bailey and S.C. Johnson have used,

-27-

disclosed or threatened to use or disclose Clorox's confidential, proprietary, and trade secret information with full knowledge that this information was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use." (Compl. ¶ 55, Docket #1). Moreover, Clorox, through its allegations that Bailey may have taken Clorox files, could present a set of facts establishing that SCJ is actually threatening to misappropriate Clorox's trade secrets by using Bailey as a conduit of information. Although the factual allegations contained in the complaint, if true, may not ultimately establish a misappropriation claim without the benefit of the inevitable disclosure theory, the court is unable to find that Clorox cannot prove any set of facts to support its actual or threatened misappropriation claim. Therefore, the court is obliged to deny SCJ's motion to dismiss for failure to state a claim.

## IV. TRO AND PRELIMINARY INJUNCTION

The court now turns to Clorox's motion for a TRO and preliminary injunction. Clorox seeks an order against SCJ and anyone acting in concert with it, prohibiting them from using or disclosing Clorox's confidential proprietary and/or trade secrets and prohibiting SCJ from employing, contracting or affiliating with Bailey. (Pl's Emergency Mot., 2, Docket #6). Before the court will issue preliminary injunctive relief, the party seeking such relief must first demonstrate the following: (1) a reasonable likelihood of success on the merits of the party's claim; (2) that the party had no adequate remedy at law; and (3) that the party will suffer irreparable harm in the absence of injunctive relief. *Anderson v. U.S.F. Logistics (IMC), Inc.*, 274 F.3d

470, 474-75 (7th Cir. 2001). If the moving party fails to demonstrate any of these threshold elements, the court must deny preliminary injunctive relief. *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S., Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008). If, however, the moving party meets the first three threshold elements, the court must then weigh the irreparable harm the moving party would suffer in the absence of an injunction against the irreparable harm the nonmoving party would suffer if the injunction were issued. *Id.* The court must also consider the effects of granting or denying preliminary injunctive relief on any nonparties. *Id.*

The court's analysis of Clorox's TRO and preliminary injunction motion begins and ends, for the most part, on Clorox's likelihood of success on the merits of its claim. This relatively low threshold is met if the moving party shows "a 'better than negligible' chance of success on the merits of at least one of its claims." *Id.* at 1096 (citations omitted). Clorox's complaint sets forth two counts, both of which claim misappropriation of its trade secrets. In its brief in support of its motion, Clorox hinges its success on the merits of its claim entirely on the inevitable disclosure theory of trade secret misappropriation as set forth in the *PepsiCo.* case. Specifically, Clorox alleges that Bailey is in possession of Clorox's valuable trade secrets and will inevitably disclose them, or use them on behalf of SCJ, during the course of his employment with SCJ. (Pl's Br. in Supp. 22-26, Docket #7). However, as the court noted above, California does not recognize the inevitable disclosure theory of trade secret misappropriation. Therefore, because California law applies

-29-

to Clorox's misappropriation of trade secrets claim, the court finds that Clorox has failed to demonstrate a reasonable likelihood of success on the merits. Without the benefit of the inevitable disclosure theory, the court considers Clorox's likelihood of success on the merits to be negligible.

Even if Clorox had demonstrated a reasonable likelihood of success on the merits, the court would still be inclined to deny preliminary injunctive relief. The court recognizes that the loss of trade secrets regarding time-sensitive business strategies to an arch-competitor could rise to the level of irreparable harm that cannot be adequately addressed through later recovery of damages. Clorox's allegation that Bailey may improperly disclose or use information regarding Clorox's imminent strategic plans for its GreenWorks products, or the pending redesign of a Clorox product line, might fit the irreparable harm test. However, when balancing this potential irreparable harm Clorox may suffer if an injunction were denied, against the harms that SCJ would suffer by being deprived of a top employee for the near future, the court considers the scales to be evenly weighted. SCJ has represented to the court that it has instructed Bailey not to disclose to SCJ Clorox's confidential information. (Def.'s Br. in Supp. of Mot. to Intervene, 5-6, Docket #40). Bailey also presumably remains bound by the confidentiality agreement he signed with Clorox. But the balancing does not end with the countervailing harms Clorox and SCJ may suffer. The court must also consider the effect an injunction would have on certain nonparties. The scales tip against granting a preliminary injunction on this measure.

-30-

For if an injunction were granted, Bailey would suffer tangible harm by being unable to pursue his career with SCJ.

Accordingly, because Clorox has not met the threshold showing of a reasonable likelihood of success on the merits of its claim, the court is obliged to deny Clorox's motion for a TRO and a preliminary injunction.

## V.    THE ANCILLARY MOTIONS

The parties have filed a number of motions, which the court now addresses. First, on May 4, 2009, Clorox filed a document referenced as a "RULE 7.4 EXPEDITED NON-DISPOSITIVE MOTION TO CONFIRM CASE STATUS." (Docket #28).  Apparently, after the May 1, 2009 hearing, the parties disagreed on whether the court had ruled on Clorox's motion for a TRO and preliminary injunction. SCJ believed that the court had de facto denied the TRO portion of Clorox's motion. In fact, the court did not rule on Clorox's motion at the May 1st hearing. (Hearing Tr., 2-3, May 1, 2009, Docket #57).  To the extent the status of the case was unclear to the parties after the May 1st hearing, today's order should resolve those concerns.

Next, Clorox filed an expedited motion to enforce a side agreement between the parties and to impose non-monetary sanctions.  (Docket #46).  In the motion, Clorox claims that SCJ did not honor an agreement between the parties preserving the status quo.  In that agreement, SCJ agreed that Bailey would not start work at SCJ until the court ruled on the TRO portion of Clorox's initial motion.  In spite of the court not having ruled on the TRO, Bailey began work at SCJ.  Clorox requests the

-31-

court opine on the parties' agreement and impose a sanction against SCJ tantamount to a TRO prohibiting Bailey from working at SCJ. SCJ responds that it never agreed to maintain the status quo while the parties developed the facts for a preliminary injunction determination. While the court does not turn a blind eye to alleged misconduct by the parties or their counsel, the court declines to wade into the murky waters of side agreements that may have been entered into between the parties in this case. In any event, the court considers Clorox's motion to be moot in light of the today's ruling.

With respect to Clorox's motion for expedited discovery, the court noted at the May 1, 2009 hearing that it would be granted. Although the discovery schedule related mostly to Clorox's motion for preliminary injunction, the court now formally grants the motion. (Docket #8).

The court will also grant SCJ's motion for leave to file excess pages in its reply brief to its motion to dismiss. (Docket #58). The court is mindful, and appreciative of the expedited briefings both parties have provided on the issues now before the court.

Finally, the court has reviewed the parties' proposed protective order governing the exchange of confidential information and is satisfied that it meets both the local rules of this district, and relevant Seventh Circuit case law. (Docket #53).

The protective order shall be issued.[12]  Clorox's previously filed motion for a protective order will be denied as moot.  (Docket #9).

Accordingly,

**IT IS ORDERED** that plaintiff's emergency motion for temporary restraining order and preliminary injunction (Docket #6) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that plaintiff's motion for expedited discovery (Docket #8) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that plaintiff's motion for entry of a protective order (Docket #9) be and the same is hereby **DENIED** without prejudice to the parties' jointly filed proposed protective order (Docket #53);

**IT IS FURTHER ORDERED** that plaintiff's expedited motion to confirm ruling (Docket #28) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that Timothy Bailey's motion to intervene (Docket #39) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that defendant's motion to dismiss the complaint (Docket #44) be and same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that plaintiff's motion to enforce the parties' side agreement (Docket #46) be and the same is hereby **DENIED**;

---

[12]The protective order will be issued and filed separately.

-33-

**IT IS FURTHER ORDERED** that defendant's motion for leave to file excess pages to is reply brief in support of its motion to dismiss (Docket #58) be and the same is hereby **GRANTED**.

Dated at Milwaukee, Wisconsin, this 9th day of June, 2009.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge

-34-